# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EDDIE MONTOYA,

    Plaintiff

vs.                                                                      No. CIV 00-1076 JC/WWD

MERVYN'S INC.,
a Foreign Corporation,
a/k/a MERVYN'S,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant Mervyn's Inc.'s Motion for Summary Judgment, filed May 11, 2001 *(Doc. 25)*. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendant's motion will be granted in part and denied in part.

### I.    Background

Plaintiff Eddie Montoya began his employment with Defendant Mervyn's in 1986 as a store clerk. After a couple of years, Plaintiff moved into Defendant's Asset Protection Program where he served as a Store Investigator. In 1991, Plaintiff was promoted to the position of Key Store Investigator. Defendant maintains that the duties of the Key Store Investigator included the apprehension of shoplifters, conducting investigation of cases of internal and external theft, training employees, and conducting store audits. *See* Defendant Mervyn's Inc.'s Memorandum in Support of Motion for Summary Judgment ("Df.'s Memo.") at 2-3, ¶ 3, filed May 11, 2001 *(Doc.*

*26).* Plaintiff disputes that the apprehension of shoplifters was a part of his duties; instead, Plaintiff maintains that his duties as Key Store Investigator included the detection and prevention of criminal activity. *See* Plaintiff's Memorandum Brief in Opposition to Summary Judgment ("Pl.'s Memo.") at 8, filed May 11, 2001 *(Doc. 27)*.

Later in the year of 1991, Plaintiff was again promoted to the position of District Investigator, where he was responsible for overseeing the performance of up to seven investigators in two stores. However, Plaintiff only served in this capacity for four months. Defendant claims that Plaintiff was asked to step down as District Investigator because of performance problems. *See* Df.'s Memo. at 3, ¶ 6. However, Plaintiff claims he left the position because of fundamental value differences with his supervisor. *See* Pl.'s Memo. at 8. Plaintiff resumed his prior position as Key Store Investigator until his employment ended in March of 1999.

In July of 1998, Plaintiff was involved in a motor vehicle accident not related to his employment. Plaintiff suffered neck and back strains which prevented him from performing his duties. Defendant placed Plaintiff on a leave of absence. While Plaintiff was on his leave of absence, Defendant completed a mid-year performance review of Plaintiff that downgraded him by two levels. *See* Exhibit 2, attached to Plaintiff's Memo. Plaintiff was unaware of this review, and the document was not signed by him or dated by any of the parties as done on previous reviews.

In August of 1998, Plaintiff's treating physician released him to return to work with the restriction that "he is not to physically participate in the direct apprehension of shoplifters or other criminals." *See* Df.'s Memo. at 4-5, ¶ 13. Defendant claims that because the apprehension of

2

criminals was a key part of Plaintiff's job as a Key Store Investigator, Defendant did not allow Plaintiff to return to work at that time. *See id.* In response, Plaintiff claims that the apprehension of shoplifters was not a critical part of his duties, so Defendant should have allowed him to return to work. *See* Pl.'s Memo. at 8.

One month later, in September of 1998, Plaintiff returned to work when Defendant put together a part-time schedule for him consisting of limited duties that Defendant determined Plaintiff was able to perform with his medical restriction. On October 8, 1998, Plaintiff's physician cleared him to return to work without restrictions, and Plaintiff returned to duty full-time.

On January 6, 1999, Plaintiff was injured during the apprehension of a suspect. However, Plaintiff did not obtain any medical care and lost no work time as a result of this incident. During this same month, Defendant decided to reorganize its Assets Protection Department. One of the changes included the elimination of the Key Store Investigator position. Instead, Defendant decided to create a new position called Asset Protection Team Leader. The duties of this new position included the supervision, leadership, management, and motivation of Store Investigators and other team members. The Asset Protection Team Leader position carried with it a higher level of responsibility and compensation than the Key Store Investigator position. The reorganization impacted several other stores in addition to the Santa Fe store where Plaintiff was employed.

Randy Allen, the Regional Asset Protection Team Leader, informed Plaintiff of the reorganization, and Plaintiff expressed his interest in applying for the new position. Mr. Allen also solicited applications from others eligible to apply. A total of eleven individuals applied for

3

the six available positions. Mr. Allen reviewed and evaluated the applicants, and he decided that nine of the eleven applicants would be interviewed. Plaintiff and one other applicant were not selected for an interview. The 1998 mid-year performance review which was never seen by the Plaintiff was used in this application process. *See* Exhibit K, attached to Df.'s Motion.

Plaintiff was then given two options. Plaintiff could either accept a Store Investigator position and a pay decrease of $1 per hour, or he could resign and take a severance package upon an execution of a release. Plaintiff submitted his resignation, but declined to sign the release in order to sue the Defendant. Plaintiff now brings this suit claiming that Defendant discriminated against him based on a perception of a physical disability or serious medical condition in violation of the New Mexico Human Rights Act (Count I), breached an implied contract (Count II), breached the implied covenant of good faith and fair dealing (Count III), wrongfully terminated him (Count IV), and caused an intentional infliction of emotional distress (Count V).

## II.   Standard of Review

"The standard of review for a motion for summary judgment is whether there are any genuine issues of material fact and whether the moving party is entitled to summary judgment as a matter of law." *Williams v. Central Consol. Sch. Dist.*, 1998-NMCA-006, ¶ 7, 124 N.M. 488, 952 P.2d 978. A court considers the facts in the light most favorable to the party opposing summary judgment. *See Gillin v. Carrows Restaurants, Inc.*, 118 N.M. 120, 122, 879 P.2d 121, 123 (Ct. App. 1994). If, however, the facts are not in dispute, and only a legal interpretation of the facts remains, summary judgment is appropriate. *See Garrity v. Overland Sheepskin Co.*, 1996-NMSC-032, ¶ 29, 121 N.M. 710, 917 P.2d 1382.

## III.   Analysis

### A.     The New Mexico Human Rights Act

Defendant moves for summary judgment by arguing that Plaintiff cannot prove a prima facie case on his discrimination claim under the New Mexico Human Rights Act ("NMHRA"). The NMHRA makes it an unlawful discriminatory practice for an employer "to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition...." N.M. STAT. ANN. § 28-1-7(A) (2000).

In order to establish a prima facie case of discrimination under the NMHRA, Plaintiff must demonstrate that he is a member of a protected class.  *See Martinez v. Yellow Freight System, Inc.*, 113 N.M. 366, 369-70, 826 P.2d 962, 965-66 (1992).  Here, Plaintiff contends that he falls within the protected class of being physically handicapped because Defendant regarded him as having a physical handicap or serious medical condition.  *See* N.M. STAT. ANN. § 28-1-2(M) (2000).  In support of this argument, Plaintiff maintains Defendant's refusal to return him to work on August 25, 1998, is evidence that Defendant regarded him as having a physical handicap.  *See* Pl.'s Memo. at 10-11.  However, Plaintiff's analysis ignores relevant subsequent facts.

One month after Defendant refused to allow Plaintiff to return to work, Defendant put together a part-time schedule for Plaintiff consisting of limited duties that Plaintiff was able to perform with his medical restriction.  More importantly, on October 8, 1998, Plaintiff's physician cleared him to return to work without any medical restrictions.  *See* Exhibit 7, attached to Pl.'s Memo.  In fact, Defendant did return Plaintiff to work full-time without any restrictions.  Without further evidence that Defendant still regarded Plaintiff as being physically handicapped, the only

reasonable conclusion is that Defendant regarded Plaintiff's injuries as temporary.

Consequently, Plaintiff does attempt to show that Defendant still regarded him as being physically handicapped by pointing to the following evidence: (1) Defendant took away his work responsibility of scheduling; (2) employees testified before the New Mexico Human Rights Commission that management was "hostile" towards Plaintiff when he returned to work; and (3) on January 6, 1999, Plaintiff sustained injuries when he apprehended a suspect. However, the Court finds that this evidence is insufficient to withstand summary judgment.

Prior to the accident, Plaintiff was responsible for scheduling his time and another employee's time. *See* Exhibit 1 at 123-124, attached to Pl.'s Memo. When Plaintiff was on his leave of absence, his supervisor took over the scheduling function. *See id.* When Plaintiff returned to work, his supervisor decided to retain the responsibility of scheduling. *See id.* The Court fails to see how a reasonable jury could infer that this change in scheduling is evidence that Defendant regarded Plaintiff as being physically handicapped.

Turning to the testimony by employees that management was hostile toward Plaintiff, such conclusory statements and beliefs are insufficient to raise a genuine issue of material fact. The testimony cited by the Plaintiff fails to shed light on how Defendant viewed Plaintiff as being physically handicapped. The record reveals that the alleged instances of hostility are unquantified and occurred at some point in the unspecified past. Simply, Plaintiff has failed to establish any context for these alleged instances of hostility by management. *See, e.g., Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 171 (6th Cir.1996) (holding that the discharged employees failed to show pretext when alleging numerous instances of disparate treatment and a hostile work environment in conclusory terms with no reference to names, times and occasions). Thus, the

Court concludes this evidence suffers fatal shortcomings and is insufficient to create a genuine issue of material fact on the issue of whether Defendant regarded Plaintiff as having a physical handicap.

Finally, Plaintiff maintains that Defendant regarded him as being physically handicapped when he sustained injuries in apprehending a suspect on January 6, 1999. However, the undisputed facts show that Plaintiff sought no medical treatment for his injuries and never missed work. Again, the only reasonable conclusion is that Plaintiff suffered a temporary injury.

In summary, there is no medical evidence that Plaintiff had an ongoing medical condition. Plaintiff's injuries were nothing more than temporary. Plaintiff returned to work full-time without any medical restrictions. Thus, Plaintiff has failed to present evidence that Defendant regarded him as having a physical handicap or serious medical condition. Accordingly, Plaintiff has failed to establish a prima facie case under the NMHRA, and Defendant's motion for summary judgment regarding Plaintiff's NMHRA claim is granted.

      **B.**    **Breach of Contract Claim**

Defendant also moves for summary judgment on Plaintiff's claim of a breach of an implied employment contract. *See* Df.'s Memo. at 20. Defendant argues that because Plaintiff was an at-will employee, he could be discharged in any manner. *See id.* In response, Plaintiff argues that Defendant's failure to follow its policies and procedures regarding his performance review in 1998 negatively impacted his opportunity for a promotion, thereby resulting in a constructive discharge which breached his implied employment contract. *See* Pl.'s Memo at 15-16.

In New Mexico, a personnel manual results in an implied contract if it controls the employer-employee relationship and an employee can reasonably expect his or her employer to

conform to the manual's procedures. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 11, 121 N.M. 728, 731, 918 P.2d 7, 10.  In order to support a finding that the employer has made a promise that modifies an employee's employment contract, the fact finder must examine the totality of the circumstances surrounding the employment relationship. *See Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989); *see also Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 26, 766 P.2d 280, 286 (1988).  Whether an at-will employment relationship has been modified constitutes a factual issue.  *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 679, 857 P.2d 776, 780 (1993).  Moreover, the New Mexico Supreme Court has held that "'if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.'" *Lukoski v. Sandia Indian Management Co.*, 748 P.2d 507, 510 (N.M. 1988) (*quoting Leikvold v. Valley View Community Hosp.*, 688 P.2d 170, 174 (Ariz. 1984).

In this case, Plaintiff has presented a genuine issue of material fact regarding his breach of contract claim.  Plaintiff has presented evidence to show that the performance review provisions in the personnel manual controlled the employment relationship, and that he relied on the way the performance reviews were administered by the Defendant.  Specifically, Defendant's personnel manual states:  "Mervyn's California also provides an opportunity for you to talk to your team leader about the areas in which you need to improve."  *See* Exhibit 5, attached to Pl.'s Memo. Defendant assessed an employee's performance through written evaluations.  *See* Exhibit 2, attached to Pl.'s Memo.  These evaluations were typed and signed by the employee and employer after the appropriate review by each party.  *See id.*  Thus, Plaintiff has presented evidence to show

8

that the performance evaluation process controlled the employment relationship.

In addition, Plaintiff has presented evidence that Defendant deviated from the performance review process, thereby resulting in a constructive discharge. Plaintiff's performance evaluations in 1996 and 1997 were properly dated, typed, and signed by him and his supervisors. *See* Exhibit 2, attached to Pl.'s Memo. In 1997, Plaintiff's performance was rated as "Excellent." *See id.* However, in July or August of 1998 while Plaintiff was on his leave of absence, Defendant completed a mid-year performance review of Plaintiff that downgraded him by two levels. *See id.*; *see also* Exhibit 1 at 97-98, attached to Pl.'s Memo. Plaintiff was unaware of this review and the document was not signed by him or dated by any of the parties. Furthermore, Plaintiff has shown that Defendant relied on the 1998 mid-year performance review in determining whether he was eligible for the promotion to Asset Protection Team Leader. *See* Exhibit K, attached to Df.'s Motion. Thus, a reasonable jury could find that Plaintiff was entitled to expect the Defendant to conform to the performance evaluation procedures outlined in the personnel manual. A reasonable jury could further find that Plaintiff had the right to rely on the Defendant's practice of having employees review, sign, and date the performance reviews. Finally, a reasonable jury could find that because the 1998 mid-year performance review was used to deny him a promotion, the chances of Plaintiff ever receiving another promotion in the future were slim; therefore, Plaintiff had no other option than to resign. Thus, the Court finds a question of fact exists as to whether Defendant's performance review procedures were treated as mandatory and binding, and whether Defendant's failure to follow these procedures resulted in a constructive discharge. Accordingly, Defendant's motion for summary judgment regarding Plaintiff's breach of contract claim is denied.

### C.     Breach of the Covenant of Good Faith and Fair Dealing

Defendant moves for summary judgment on Plaintiff's claim of a breach of the covenant of good faith and fair dealing by arguing that this cause of action does not exist if Plaintiff's employment was at-will. *See* Df.'s Memo. at 20-21. For the reasons stated above, the Court finds that a genuine issue of material fact exists as to whether Plaintiff's employment was at-will. Accordingly, Defendant's motion for summary judgement regarding Plaintiff's breach of the covenant of good faith and fair dealing claim is denied.

### D.     Wrongful Discharge

Defendant further moves for summary judgment on Plaintiff's wrongful discharge claim by arguing that there is no evidence of retaliation. *See* Df.'s Memo. at 21. In order for Plaintiff to recover under a wrongful discharge claim, he must demonstrate that he was discharged because he performed acts that public policy has authorized or would encourage, or because he refused to do something required by Defendant that public policy would condemn. *See Garrity v. Overland Sheepskin Company of Taos*, 1996-NMSC-032 ¶ 15, 121 N.M. 710, 714. In addition, Plaintiff must show a causal connection between his actions and his subsequent discharge. *See id.*

In this case, Plaintiff has failed to show that Defendant violated a clear mandate of public policy. *See Shovelin v. Central N.M. Elec. Coop.*, 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993) (Critical to establishing this cause of action is a showing that the employer violated a clear mandate of public policy by discharging an employee). In fact, it is almost impossible to tell what mandate of public policy Plaintiff is claiming that Defendant violated. Even if an extremely liberal construction of Plaintiff's pleadings does reveal a mandate of public policy violated by the Defendant, Plaintiff has still failed to place these events into context with his alleged discharge. In

other words, Plaintiff has failed to present evidence on how Defendant's violations of public policy are causally connected to his discharge. Accordingly, Defendant's motion for summary judgment regarding Plaintiff's claim of wrongful discharge is granted.

### E. Intentional Infliction of Emotional Distress

Finally, Defendant moves for summary judgment on Plaintiff's claim of intentional infliction of emotional distress. *See* Df.'s Memo. at 22. A claim for intentional infliction of emotional distress requires a plaintiff to show that a defendant engaged in extreme and outrageous conduct which was done recklessly or with the intent to cause severe emotional distress. *See Andrews v. Stallings*, 119 N.M. 478, 491, 892 P.2d 611, 624 (Ct.App. 1995). Simply, nothing alleged by Plaintiff rises to the level of extreme and outrageous conduct. Accordingly, Defendant's motion for summary judgment on Plaintiff's claims of intentional infliction of emotional distress is granted.

## IV. Conclusion

For the above reasons, Plaintiff has failed to establish his prima facie case under the New Mexico Human Rights Act by showing that Defendant regarded him as being physically handicapped. Plaintiff has also failed to present a genuine issue of material fact regarding his wrongful discharge claim. Finally, Plaintiff has failed to present evidence of extreme and outrageous conduct by the Defendant, thereby making summary judgment appropriate with regard to his claim of intentional infliction of emotional distress. However, Plaintiff has provided sufficient evidence to withstand summary judgment with regard to his claims of breach of contract and breach of the implied covenant of good faith and fair dealing.

Wherefore,

**IT IS ORDERED** that Defendant Mervyn's Inc.'s Motion for Summary Judgement, filed May 11, 2001 *(Doc. 25)* is granted in part and denied in part.  The following causes of action are hereby dismissed:  Count I - Violation of the New Mexico Human Rights Act; Count IV - Wrongful Termination; and Count V - Intentional Infliction of Emotional Distress.

DATED July 2, 2001.

_____
United States District Judge

Counsel for Plaintiff:

> Gilbert J. Vigil, Esq.
> Albuquerque, New Mexico

Counsel for Defendant:

> Christopher M. Moody, Esq.
> Anne Marie Turner, Esq.
> Noeding & Moody, P.C.
> Albuquerque, New Mexico